Johnston, J., dissenting.

---

JOHN W. KELLEY v. THE UNION PACIFIC RAILWAY COMPANY.

**No. 9029.**

1. APPELLATE PROCEDURE — *receiver for property of defendant in error appointed after petition in error filed, not a necessary party thereto.* Where a proceeding in error is instituted in this court to reverse a judgment in favor of the defendant, rendered in an action brought against a railway company to recover damages for personal injuries sustained by the plaintiff, receivers appointed to take charge of the property of the defendant Company after the filing of the petition in error in this court are not necessary parties to the case. *Scannell v. Felton* (57 Kan. 468), distinguished.

2. EVIDENCE EXAMINED — *and held sufficient as against demurrer.* The evidence considered, and held that it was sufficient to require its submission to the jury, and that the ruling of the court sustaining a demurrer thereto was erroneous.

Error from Leavenworth District Court. Hon. Robert Crozier, Judge. Opinion filed May 8, 1897. *Reversed*.

11—58 KAN.

*Fenlon & Fenlon,* for plaintiff in error.

*A. L. Williams, N. H. Loomis* and *R. W. Blair,* for defendant in error.

ALLEN, J. This action was brought by Kelley to recover damages for injuries received by him while employed as a bridge carpenter in constructing a bridge on the line of the defendant's road. The court sustained a demurrer to the plaintiff's evidence, and he thereupon brought the case to this court to obtain a review of that ruling. The defendant in error moves to dismiss, on the ground that, on October 13, 1893, after the petition in error was filed, the property of the defendant was placed in the hands of receivers who have never been made parties to the proceedings in this court. The only authority cited in favor of the motion is the case of *Scannell v. Felton* (57 Kan. 468; 46 Pac. Rep. 848), in which this court held that "a receiver of an insolvent bank, duly appointed to take charge of the assets under the Banking Law, is a necessary party to a proceeding in error in this court to reverse a judgment rendered in favor of the bank prior to his appointment." In that case, it appeared that the bank was insolvent, and that the only persons interested in enforcing the judgment were its creditors. It was held that the receiver, as their representative, was a necessary party to a proceeding to reverse the judgment. This is an essentially different case. The receivers are not interested in establishing the demand. It is not of the assets in their hands. Nor is there any attempt, as yet, to charge the assets in their hands with the payment of the claim. The injury for which the plaintiff seeks compensation was received while he was employed by the Railway Company, and his cause of action is against it. The fact

that the assetts of the Company have been placed in the hands of the receivers does not change nor affect the liability of the Railway Company to the plaintiff; and the receivers are not necessary parties to a determination of the controversy. *T. W. & W. Rly. Co. v. Beggs*, 85 Ill. 80; *Mercantile Trust Co. v. Pittsburg & W. R. Co.*, 29 Fed. Rep. 732; High on Receivers (3d ed.), § 258; *Patrick v. Eells*, 30 Kan. 680.

1. Receiver not necessary party, when.

It appears from the testimony given on behalf of the plaintiff that he was one of a gang of eight men, working under the direction of George Sherwood, constructing a pile bridge across Stranger Creek, to take the place of a Howe truss bridge. The piles had been driven before this gang commenced work. The plaintiff was first engaged in bringing the piles into line, by digging and forcing them with a jack-screw. While he was so employed, other members of the gang constructed a scaffold, attached to the piles, on which the plaintiff afterward stood while sawing off the tops of the piles and preparing them for the superstructure. In order to proceed, it became necessary to move one of the beams in the old bridge to make room to do the work. While the plaintiff was holding a jack-screw, which was being used in moving the beam, the scaffold on which he was standing gave way, and he fell a distance variously estimated at from twelve to twenty feet, breaking his leg, and otherwise injuring him. That part of the scaffold from which he fell was constructed by placing timbers thirty-two feet long and about seven inches square, designed for guard rails, on each side of the piling, each supported by three-fourths-inch iron bolts, driven into the piles. It appears that but two bolts were used to support each beam. Across these, plank were laid on which the men stood to work. The bolt

at the west end of one of these beams bent, and allowed the scaffolding to fall. The weakness of the fastenings used to support the scaffolding caused the plaintiff's injury. He testified that he took no part in constructing the scaffold, and that he did not know before he went upon it how it was built. He also testified that he could have seen how it was constructed if he had examined it, but that he did not do so. We are not advised as to the precise view the trial court took of the testimony, but it is urged by counsel for defendant in error, in support of the ruling of the court, that the record fails to disclose any culpable negligence on the part of the defendant; that Kelley's opportunities for knowing the condition of the scaffold were equal to those of the defendant; that it was in the line of his duty to examine, and know whether the scaffold was safe, and that the rule requiring the master to furnish the servant a safe place to work does not apply in this case, because the servant himself was employed to construct the structure from which he fell. We think there was sufficient proof to take the case to the jury. The plaintiff took no part in constructing the scaffold. It was built by others, under the direction of the foreman. While he might have examined the fastenings to see whether it was safe before going upon it, he had a right to rely on the foreman and the men working under him to construct a safe support before ordering him to go upon it. It appears that he was directed by the foreman to go where he did, and to perform the work in the prosecution of which he was injured because of the insecurity of the scaffold. The contention that there is no evidence tending to show negligence is unsound. It was for the jury to say whether a beam about seven inches square and thirty-two feet long was, by the two iron bolts driven into the piles,

made reasonably secure for the purpose of supporting, not only its own weight, but that of the plank placed across it and the men with their tools working upon it. It may be conceded that the mere fact that the scaffold fell does not necessarily prove carelessness in its construction ; but the evidence disclosed just how the scaffold was constructed, and the manner in which

2. Evidence sufficient. it gave way. From these facts, there was a basis from which the jury might determine whether the foreman used reasonable care in providing for the plaintiff's safety. It is difficult to perceive how the cause of the accident could have been more clearly proved, or what other facts bearing on the question of negligence could have been disclosed by evidence.

It is contended that the petition charges only a common-law liability, and that therefore a recovery cannot be had because of the negligence of co-employees. The petition charges that the scaffold was constructed by the defendant and its other employees, and that the plaintiff had nothing to do with it, and no knowledge, nor means of knowledge, as to whether it was sufficient. No objection appears to have been taken to the form of the petition. The answer was a general denial and a charge of contributory negligence on the part of the defendant. Under the issue raised, it was competent for the plaintiff to sustain his case by proof of negligence of the foreman and those working under him ; and the evidence introduced tended to prove a cause of action at common law as well as under the statute. If the petition was not sufficiently specific, it should have been attacked by proper motion. The court erred in sustaining the demurrer to the evidence.

The judgment is reversed, and the cause remanded for a new trial.